```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA

MARSHA MADEWELL,                    )
                                    )
          Plaintiff,                )
                                    )
v.                                  ) No. CIV-06-526-FHS
                                    )
DEPARTMENT OF VETERANS AFFAIRS      )
and AGENCY, R. JAMES NICHOLSON,     )
Secretary of Department of          )
Veterans Affairs and Agency,        )
Agency Head, in his Official        )
Capacity,                           )
                                    )
          Defendant.                )
```

**OPINION AND ORDER**

Marsha Madewell ("Madewell") brings this action against the Department of Veterans Affairs and its agency head, R. James Nicholson (collectively the "VA"), alleging (1) disability discrimination under the Rehabilitation Act of 1973 (2) retaliation under Title VII of the Civil Rights Act of 1964, (3) violation of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and (4) common law torts of intentional infliction of emotional distress, defamation, and failure to direct, supervise and train. This matter comes before the Court on the VA's motion for summary judgment. Having fully considered the respective submissions of the parties, the Court finds that summary judgment in favor of the VA is appropriate as to all claims asserted by Madewell.

I.  Background

Madewell was employed by the VA as a Veterans Claims Examiner ("VCE") in the Education Division at the VA's Regional Office in

Muskogee, Oklahoma, from September 27, 1998, until her termination from employment on July 15, 2005. A VCE is responsible for receiving, reviewing, and making decisions on applications for educational benefits for veterans. Madewell's particular assignment as a VCE was with the Original Team, a component of the overall VCE structure which dealt with initial claims where the eligibility of applicants for educational benefits had yet to be established. These claims were considered to be "end products" and each was assigned a unique number based on the type of claim. All VCEs were evaluated based on the VA's national performance standards which contained three critical elements: quality, productivity, and customer service. Each VCE within the Original Team was required to produce 240 end products each month to satisfy the productivity requirement under this national standard.

Beginning in 2003 and continuing up until her termination on July 15, 2005, Madewell reported what she contends were "illegal, wasteful and fraudulent practices of [her] managers" with respect to the processing of the end products. Madewell Declaration, p. 2, ¶ 4. It is Madewell's position that veterans were denied educational benefits to which they were entitled due to the practice of VA managers requiring the maximization of end products – all for the benefit of those managers who would be entitled to a bonus based on the number of claims processed. Madewell contends she reported this improper conduct not only to her supervisors and managers, but also to the office of United States Senator, James Inhofe.

In 2003, Jim Cathey ("Cathey"), a Supervisory Claims Examiner, was Madewell's direct supervisor. In June of 2003, Cathey reminded Madewell of the 240 minimum end products requirement after Madewell had failed to meet this minimum requirement for May of 2003.

2

Madewell informed Cathey that her low production was due to her poor eyesight and migraine headaches that interfered with her vision and work performance.  Despite the admonition from Cathey, Madewell failed to meet the minimum production requirement for June and July of 2003.  In an August 12, 2003, memorandum to Madewell, the VA documents Madewell's adjusted production levels as 133 for May, 187 for June, and 233 for July.  Attachment 1 to Defendant's Exhibit A (Affidavit of J.D. Dillingham ("Dillingham"), VA Assistant Education Officer).  This memorandum also informed Madewell that her within grade increase scheduled for September 21, 2003, may be delayed and that any such increase would be granted effective September 21, 2003, provided Madewell met the production requirement for August of 2003.  Finally, this memorandum informed Madewell that her failure to meet the minimum levels of each element of the national performance standards would result in verbal counseling for the first violation, a written Performance Assistance Plan ("PAP") for the second violation, and placement on a Performance Improvement Plan ("PIP") for a third violation.

Despite her failure to meet the production requirements in the summer of 2003, Madewell received a successful performance appraisal for the rating period of October 1, 2002, through September 30, 2003.  Madewell's inability to meet the production requirement continued, however, as she failed to meet the standard in October and November of 2003.  On December 10, 2003, Madewell was placed on a PAP.  Madewell met the minimum standard in December of 2003 and was removed from the PAP.  Once again, however, Madewell failed to meet the minimum standard in February of 2004. On March 5, 2004, Madewell was placed on a PIP which required her to show improvement by meeting the 240 minimum production standard for the months of March, April, and May of 2004.  Madewell was informed that her failure to comply with the PIP and maintain the

3

required production level could result in an adverse employment action, including termination.  In conjunction with this PIP, Cathey assigned a Senior Examiner to work with Madewell and provide her with feedback concerning her procedures.

On April 15, 2004, Madewell was informed her mid-year appraisal was going to be delayed because she was on a PIP which had been extended to July 31, 2004.  Madewell failed to meet her production requirement for June of 2004, but did meet it for July of 2004.  As a result, Madewell was removed from the PIP and given her mid-year evaluation on August 9, 2004.  On September 1, 2004, Madewell filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the extension of the PIP.  In her EEO complaint, Madewell alleged "disability discrimination and failure to provide reasonable accommodation, harassment, humiliation, and unfair treatment."  Madewell's Federal Court Amended Complaint, p. 5, ¶ 14.

On October 25, 2004, Madewell received a successful performance rating from Cathey on all three critical elements for the period of October 1, 2003, through September 30, 2004.  In November of 2004, Madewell received a performance plan for the period of October 1, 2004, through September 30, 2005, which informed her of the need to satisfy the 240 end products requirement. Madewell failed to meet this standard for December of 2004, and she was again placed on a PAP in February of 2005. Madewell was informed by Dillingham that if she failed to meet the production requirement for February of 2005, she would be placed on another PIP.  On March 8, 2005, Dillingham placed Madewell on a ninety-day PIP based on her failure to meet the production requirement from December of 2004 through February of 2005. Assistance and additional training were offered to Madewell to

enable her to meet the production requirement level.  Madewell was also informed that her failure to satisfy and maintain the standard during the ninety-day PIP could result in an adverse employment action, including termination.

On June 13, 2005, Dillingham issued a Notice of Proposed Removal to Madewell informing her of the proposed termination of her employment as a VCE based on her failure to meet the 240 end product level for May of 2005.  On June 27, 2005, Madewell submitted a written response to Jason McClellan ("McClellan"), Acting Regional Director.  On June 30, 2005, McClellan issued his decision to remove Madewell for unacceptable performance effective July 15, 2005.

On December 4, 2006, Madewell filed this federal court lawsuit.  Madewell contends the VA terminated her employment and took other adverse employment action against her based on her alleged disability and in retaliation for her EEO and whistleblowing activities.  In moving for summary judgment, the VA argues, among other things, that (1) Madewell was not disabled within the meaning of the Rehabilitation Act, (2) she cannot refute the legitimate business reason it had for terminating her employment – her failure to meet the minimal requirements of the job, and (3) her claims for whistleblower retaliation, intentional infliction of emotional distress, defamation, and failure to direct, supervise, and train are barred for failure to exhaust administrative remedies.

II.  Summary Judgment Standard

A party moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure must show the absence of evidence

5

to support the opposing party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  A moving party must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact.  Universal Money Centers v. AT&T, 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S.Ct. 655 (1994) (quoting Fed. R. Civ. P. 56(c)).  The proponent of a summary judgment motion need not negate the opponent's claim or evidence, but rather, her burden is to show that there is no evidence in the record to support the claim.  Celotex, 477 U.S. at 325.  The nonmoving party must go beyond the pleadings and "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof."  Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

Summary judgment is not appropriate if there exists a genuine material factual issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51 (1986).  "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248).  In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the summary judgment motion.  Deepwater Invs. Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  With these standards in mind, the court turns to the merits of the VA's motion.

6

III. Disability Discrimination

Madewell's claim for disability discrimination is brought pursuant to the Rehabilitation Act of 1973. In order to establish a prima facie case of disability discrimination under the Rehabilitation Act, Madewell is required to show (1) she was a disabled person within the meaning of the Rehabilitation Act; (2) she was otherwise qualified for the job; and (3) she was discriminated against because of her disability. Pushkin v. Regents of University of Colorado, 658 F.2d 1372, 1386-87 (10th Cir. 1981); see Woodman v. Runyon, 132 F.3d 1330, 1338 (10th Cir. 1997).[1] A disability is defined under the Rehabilitation Act as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B).[2] Madewell contends her physical impairments include vision disorder, fibromyalgia, migraines, arthritis, anxiety attacks, insomnia, depression, and back problems. The unsigned November 25, 2005, statement from Dr. J. Michael Ritze ("Dr. Ritze")(Exhibit TT to Madewell's Response in Opposition to Summary Judgment) documents Madewell's impairments as diminished vision, fibromyalgia, migraines, arthritis, and fatigue. In its motion for summary judgment, the VA does not take issue with Madewell's physical impairments. VA's Motion for Summary Judgment,

---

[1] In Woodman, the Tenth Circuit noted the same prima facie test applies in actions brought under the Americans With Disabilities Act ("ADA"). Id. at 1338. In addition, the ADA standard is used for determining whether an act of discrimination violates the Rehabilitation Act. See 29 U.S.C. § 794(d). Thus, the Court relies on ADA cases in assessing Madewell's Rehabilitation Act claim.

[2] No allegation is made by Madewell of discrimination based on either "a record of such an impairment" or "being regarded as having such an impairment," 42 U.S.C. § 12102(2), which are alternate bases for defining disability under the Rehabilitation Act, see 29 U.S.C. § 794(d).

p. 13 ("Even assuming that Plaintiff has a 'physical impairment,' . . . ). A physical impairment alone, however, does not make one disabled as the Rehabilitation Act requires that such impairment must substantially limit a major life activity. See, 29 U.S.C. § 705(9)(B); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). The regulations issued by the Department of Health and Human Services under the Rehabilitation Act define major life activities as "functions such as caring for one's self, performing manual tasks, walking, sleeping, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii).

Madewell contends her physical impairments substantially limit her major life activity of working. Initially, the Court rejects any argument by Madewell that she is disabled simply because her physical impairments prevent her from performing the assigned tasks of her job as a VCE. Her alleged inability to perform the assigned tasks of her job as a VCE does not necessarily mean she is disabled under the Rehabilitation Act. 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."); Bolton v. Scrivner, Inc., 36 F.3d 939, 943 (10th Cir. 1994), cert. denied, 523 U.S. 1152 (1995); see also, Welsh v. Tulsa, 977 F.2d 1415, 1419 (10th Cir. 1992). Madewell "bears the burden 'to demonstrate that [s]he is disabled in some more general sense transcending [her] specific job, [and to establish] that [her] limitations substantially impair a major life activity.'" Otis v. Canadian Valley-Reeves Meat Co., 884 F.Supp. 446, 449 (W.D. Okla. 1994)(quoting Bolton v. Scrivner, Inc., 836 F.Supp. 783, 788 (W.D. Okla. 1993)). This burden "is not meant to require an onerous evidentiary showing," EEOC v. Heartway Corp., 466 F.3d 1156, 1164 (10th Cir. 2006)(quoting EEOC Compliance Manual § 902.4), but it does require the presentation of sufficient evidence to support

Madewell's claim that her major life activity of working was substantially limited.

In the context of the major life activity of working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). A "class of jobs" refers to "jobs utilizing similar training, knowledge, skills or abilities" within "the geographic area to which [Madewell] has reasonable access, 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B); and "broad range of jobs in various classes" refers to "jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area.", id. at § 1630(j)(3)(ii)(C). In sum, in order to be substantially limited in the major life activity of working,

> one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999).

Madewell has wholly failed to offer any evidence with respect to the "class of jobs" or "broad range of jobs" within her geographical area as set forth in these regulations. In her declaration, Madewell asserts she is unable "to perform a class of jobs or a wide range of jobs across several classes of jobs in the modern work world," Madewell Declaration, p. 17, ¶ 61, and a "broad

9

range of federal jobs and entire classes of jobs that require extensive close reading/visual work with documents and computers which an average person having comparable training, skills and abilities could perform," id. at p. 16, ¶ 57. These unsupported, conclusory allegations fail to sustain Madewell's burden of establishing that she was substantially limited in the major life activity of working. See Heartway Corp., 466 F.3d at 1164 (plaintiff must come forward with "evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate numbers of jobs for which she would be excluded); Corley v. Principi, 218 Fed.Appx. 727, 738-39 (10th Cir. 2007)(summary judgment was appropriate where plaintiff's evidence was insufficient to show he was substantially limited in major life activity of working where "(1) he did not present evidence that he was disqualified from other jobs in his geographical area requiring the same skills and abilities that he brought to the VA, and (2) he did not produce evidence of jobs in his geographical area to which he had access, or the number and type of jobs demanding similar training."). Having failed to present sufficient evidence to support her claim that her impairments substantially limited her ability to work, Madewell has failed to establish a prima facie case of disability discrimination because she has failed to show that she was a disabled person within the meaning of the Rehabilitation Act.[3]

---

[3] Madewell has filed a Motion to Reconsider the Court's previous ruling precluding any expert testimony from her retained medical expert, Dr. Ritze. By separate minute order of this date, the Court denies Madewell's Motion to Reconsider. No prejudice results from the exclusion of Dr. Ritze with respect to Madewell's burden of establishing her impairments substantially limited her ability to perform the major life activity of working. A review of both Dr. Ritze's November 25, 2005, letter and Madewell's Motion to Reconsider reveals that Dr. Ritze would, to the extent he was qualified, be testifying only as to how

10

IV. Retaliation

The anti-retaliation provision of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3. Madewell contends she was retaliated against after the filing of her September 1, 2004, EEOC complaint with respect to disability discrimination and the extension of her PIP and, in general, because of her "EEO activity." In order to establish a prima facie case of retaliation under Title VII, Madewell must show that (1) she engaged in protected opposition to discrimination; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1252 (10th Cir. 2001); Kendrick v. Penske Transp. Srvs., Inc., 220 F.3d 1220, 1234 (10th Cir. 2000). Once Madewell establishes a prima facie case of retaliation, the burden shifts to the VA to articulate a nondiscriminatory reason for the adverse employment action. O'Neal, 237 F.3d at 1252; see McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802 (1973). If the VA satisfies this burden, the burden shifts back to Madewell to prove that the VA's articulated reasons for the adverse action are pretextual. Id.; Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001).

In its motion for summary judgment, the VA argues Madewell has

---

Madewell's impairments interfered with her ability to perform as a VCE - not as to a "class of jobs" or a "broad range of jobs" as is necessary to sustain Madewell's burden of proof.

11

wholly failed to establish that the VA's articulated reason for her termination, i.e., her failure to meet the 240 end products requirement, was a pretext for unlawful retaliation.[4] The Court agrees. The VA has clearly articulated its legitimate, nondiscriminatory reason of terminating Madewell's employment based on her failure to meet the 240 end products requirement. From May of 2003 until her termination on July 15, 2005, Madewell had difficulty meeting the production level and she was counseled and advised of the need to sustain the production level throughout this period. Her failure to comply with the production requirements for a VCE constitutes a legitimate, nondiscriminatory reason for her termination. Confronted with this evidence of a legitimate, nondiscriminatory reason, Madewell may resist summary judgment by coming forward with evidence to show that the VA's reason is pretextual. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, in the employer's legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

---

[4] The VA also argues the extension of Madewell's PIP is not an adverse employment action. The Court agrees. The Tenth Circuit has held that "a PIP, standing alone, is not an adverse employment action." Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1224 (10th Cir. 2006), cert. denied, 1275 S.Ct. 1372 (2007). Only when that PIP "effects a significant change in the plaintiff's employment status" does a PIP constitute an adverse employment action. Id. A PIP is not an adverse employment action when it merely presents an employee "with clear goals to achieve her continued employment." Id. at 1225. The PIP extension issued to Madewell did not effect any significant change in her employment. It merely advised of the goals she needed to attain to continue her employment. Thus, the extension of her PIP was not an adverse employment action. It is clear, however, that Madewell's ultimate termination is an adverse employment action. Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1104 (10th Cir. 1998)("Actions such as suspensions or terminations are by their very nature adverse, even if subsequently, withdrawn.")

credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted). The Court is obligated to consider the evidence as a whole when assessing whether an appropriate showing of pretext has been made. Danville v. Regional Lab Corp., 292 F.3d 1246, 1250 (10th Cir. 2002).

Madewell's attempt at showing pretext consists entirely of her unsupported, conclusory declaration, which is replete with generic references to the transcript of her hearing before the Merit System Protection Board ("MSPB"), i.e. "the testimony at my MSPB hearing by Dillingham, Wright, and McClellan," (Madewell's Declaration p.10, ¶ 30. This is insufficient to establish pretext because Madewell's conclusory statements of "irregular procedures," "inconsistent" practices (Madewell Declaration, p. 5, ¶ 14), and "shifting reasons" for her termination (id. p. 14, ¶ 50) are not established with any underlying evidentiary materials. No factual predicate has been laid to show any weaknesses, inconsistencies, or contradictions in the VA's proffered reason for terminating Madewell. Madewell's conclusion that it is otherwise does not make it so - she must come forward with evidence to establish the pretextual nature of the VA's decision. Likewise, Madewell's conclusory statements that she was "treated differently because of her EEO activity" (Madewell Declaration p. 11, ¶ 38) and differently than other VCEs who "failed to meet the monthly production targets for number of end products" (Id. pp. 11-12, ¶ 39) fail to support a finding of pretext. While Madewell may establish pretext by showing the VA treated her differently from similarly situated employees who failed to meet the same VA production requirement, see Watts v. City of Norman, 270 F.3d 1288, 1293 (10th Cir. 2001), she has offered no evidentiary support for

such finding.[5] She has failed to lay the factual predicate by coming forth with admissible evidence of similarly situated employees subject to the same standards of performance and discipline. Absent such evidence, the Court cannot sustain a finding of pretext in the context of similarly situated employees. Consequently, the Court finds Madewell's retaliation claim must fail as she has not sustained her burden of establishing that the VA's proffered legitimate, nondiscriminatory reason for her termination was pretextual.

## V. Whistleblowing

The VA contends Madewell's claim under the Whistleblower Protection Act ("WPA") is barred because she has failed to exhaust the administrative remedies available under the WPA. Madewell has not responded to this argument in her written response in opposition to summary judgment. Thus, the record is silent as to any WPA claim having been asserted by Madewell before the MSPB. "The WPA does not give an aggrieved employee the right to seek relief directly in federal district court." Quinn v. West, 140

---

[5] Madewell's repeated references in her declaration to the testimony of individuals before the MSPB is inadequate. Even assuming the admissibility of such transcript in the context of a discrimination claim in a "mixed" action (nondiscrimination and discrimination claims), Madewell is obligated to direct the Court to the precise page and lines supporting her contention. See Tilley v. Frank, 728 F.Supp. 1293, 1295 (M.D. La. 1990)("mixed" actions are filed in the district court with discrimination claim subject to trial de novo review, 5 U.S.C. § 7703(c), and nondiscrimination claim reviewed on the administrative record, 5 U.S.C. § 7703(c)(1)-(3)). Otherwise, the Court is confronted with the proverbial "needle in a haystack" dilemma of combing through 995 pages of transcript to ferret out those portions which support Madewell's position. Thus, even assuming the transcript is admissible as to Madewell's retaliation claim, the Court is not inclined to engage in such an exercise.

F.Supp.2d 725, 733(W.D. Tex. 2001). Rather, judicial review of a claim under the WPA occurs only after the MSPB has issued a final decision on the claim. 5 U.S.C. § 1221(h)(1); see Harris v. Evans, 221 F.Supp.2d. 635, 636 (D. Md. 2002). Because the record fails to establish that Madewell pursued her remedies under the WPA through the MSPB, the Court concludes summary judgment is appropriate on Madewell's WPA claim for failure to exhaust administrative remedies.[6]

## VI. Other Torts

Madewell also asserts claims for intentional infliction of emotional distress, defamation, and failure to direct, supervise, and train.[7] As argued by the VA, and uncontested by Madewell in her response, these claims are barred under the Federal Tort Claims Act ("FTCA") because Madewell has failed to file an administrative tort claim with the VA.[8] 28 U.S.C. §§ 1346(b), 2671-80; see Duplan

---

[6] Even assuming Madewell exhausted her administrative remedies, the Court agrees with the VA's alternative argument that Madewell has not shown retaliation for engaging in whistleblowing activities because she is unable to proffer admissible evidence to show that its legitimate, nondiscriminatory reason for terminating her was pretextual. The Court's analysis of the pretext issue in the context of Madewell's Title VII retaliation claim applies equally to her claim under the WPA. Madewell offers nothing other than unsupported, conclusory allegations from her declaration to support her claim of retaliation for engaging in whistleblowing activities.

[7] In her response to the summary judgment motion, Madewell stated that in addition to not pursuing any Fair Labor Standards Act claim, she was not pursuing a defamation claim. In the pretrial order, however, Madewell included a claim for defamation.

[8] The VA submitted the affidavit of Nancy Canonico, Regional Counsel, to support its argument that no administrative

v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999)("As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Thus, the Court lacks subject matter jurisdiction over Madewell's claims for intentional infliction of emotional distress, defamation, and failure to direct, supervise, and train.[9]

VII. Conclusion

Based on the foregoing reasons, the VA's motion for summary judgment is granted and the VA is entitled to judgment in its favor on all claims asserted by Madewell.

DATED this 9th day of August, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

---

claim has been filed with the VA by Madewell. Exhibit G to the VA's Motion for Summary Judgment.

[9] Having concluded it is without subject matter jurisdiction over these claims, the court declines to address the VA's additional argument that the defamation claim is excluded from FTCA coverage pursuant to 28 U.S.C. § 2680(h). The Court notes, however, that claims for defamation are excluded from the FTCA's limited waiver of sovereign immunity. Aviles v. Lutz, 887 F.2d 1046, 1049 (10th Cir. 1989).